IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MONSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   12-cv-1262-MJR-SCW |
| | ) |
| SAM NWAOBASI, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Docs. 13 & 14) on the issue of administrative exhaustion, which the undersigned has construed as a motion for summary judgment.  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendant's motion for summary judgment (Doc. 13 & 14).

### II.   Findings of Fact

**A.   Procedural Background**

On December 13, 2012 Plaintiff filed his Complaint against several Defendants including, Defendant Sam Nwaobasi, for deliberate indifference to his serious medical condition (Doc. 1).  Pursuant to 28 U.S.C. § 1915A, District Judge Reagan conducted a preliminary review of Plaintiff's Complaint on January 18, 2013 (Doc. 8).  At that time, Judge Reagan dismissed all of the claims against the other defendants, leaving only the deliberate indifference claim against Defendant

Nwaobasi (*Id.*). As to Plaintiff's claim against Defendant Nwaobasi, Plaintiff claims that Nwaobasi failed to treat him for five days after he suffered a bite from a brown recluse spider. Specifically, Plaintiff alleges that he was bit by a brown recluse spider while lying in his bunk on December 22, 2010. Although Plaintiff sought medical attention, no medical staff ever arrived. Plaintiff continued to ask for medical attention over the next few days but did not see Defendant Nwaobasi until December 26, 2010 (*Id.*). Plaintiff alleges that Defendant Nwaobasi's delay in treating Plaintiff was a result of deliberate indifference.

Now before the Court for a Report and Recommendation is a motion to dismiss filed by Defendant, which this Court construes as a motion for summary judgment (Doc. 13 & 14). The Defendant's motion alleges Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act pursuant to 42 U.S.C. §1997e(a). Specifically, Defendant points to the fact that Plaintiff admits in his Complaint that Menard Correctional Center had a grievance process but that he did not file any grievance regarding his delay in treatment. Plaintiff has filed a Response (Doc. 30) arguing that he did, in fact, file a grievance and that his statement in his Complaint was a mere scrivener's error.

**B.   *Pavey* Hearing**

Plaintiff's Complaint indicated that he did not follow the grievance procedure even though Menard Correctional Center had such a procedure because his infected spider bite posed a life threatening condition (Doc. 1). Plaintiff's response to Defendant's motion to dismiss, however, indicated that he did attempt to exhaust his administrative remedies by filing a grievance and that his indication to the contrary in his Complaint was a mere scrivener's error. In accordance with *Pavey v. Conley*, the Court conducted an evidentiary hearing on April 16, 2013. *Pavey*, **544 F.3d 739 (7th Cir. 2008).** The crux of the issue before the Court at the hearing was whether Plaintiff filed a timely

grievance in regards to the delay in his treatment for his spider bite.

At the hearing, Defendant pointed to portions of Plaintiff's Complaint as proof that Plaintiff had not exhausted his administrative remedies. Plaintiff's Complaint noted in Section III, Part A that Menard Correctional Center did have a grievance procedure (Doc. 1 at p.8). However, Part B asked whether he had "presented the facts relating to your complaint in the prisoner grievance procedure" and Plaintiff checked "no" (*Id.*). Under Part C which asked for Plaintiff to explain the steps he took in the grievance process and the result of such steps, Plaintiff wrote "N/A" for "not applicable" (*Id.*). Plaintiff also indicated in his Complaint that he did not file a grievance because he had a spider bite from a brown recluse spider that went untreated for five days and he was "undergoing life threatening conditions" (*Id.*). Defendant argued that it was clear from Plaintiff's Complaint that he did not exhaust his administrative remedies.

Defendant also offered into evidence an affidavit from the grievance officer at Menard Correctional Center (Defendant's Exhibit #1). The affidavit was signed by Lori Oakley, a grievance officer at Menard. She indicated that she had searched the database for grievances filed by Plaintiff from 12/1/2010 to present and was unable to locate any grievances filed by Plaintiff during that time period (*Id*). Defendant offered the affidavit as further proof that Plaintiff had not exhausted his administrative remedies.

Plaintiff objected to the introduction of the grievance because he had previously asked for information on his grievances and was unable to obtain the information from Defendant. Further, he had not yet received the affidavit from Defendant at the time of the hearing. He also objected to the fact that the grievance officer wrote the affidavit as Menard Correctional Center has had problems with their grievance officers in the past and some officers were terminated for not processing administrative grievances. The Court took Plaintiff's objection under advisement.

Plaintiff was also sworn in and offered testimony about his grievances. Plaintiff indicated that he received treatment from the health staff at Menard from December 2010 to August 2011 and that he did not file a grievance until on or after August 2011 when his treatment ended. He stated that he did file a grievance on both his initial delay in treatment and his request for outside medical care in the same grievance, sometime after August 2011. He admitted that he did not file a grievance within sixty (60) days of his initial spider bite as he waited until his treatment was completed. He also noted the problems that Menard had with grievance officers not processing grievances and argued that if his grievance was not fully exhausted it was because of those issues with the grievance officer at Menard. He claimed that his statements that he did not file a grievance in his Complaint were a mistake on his part.

In response to questions from the undersigned, Plaintiff indicated that his grievance in August was regarding his original delay in treatment from December 21-27, 2010, as well as a request for an outside doctor to look at his back. Plaintiff claimed that he gave the grievance to his counselor, who has since been replaced, and he never received the grievance back. He asked his counselor about the grievance at one point, although when he made his inquiry is unknown, and he was told that the grievance officer still had his grievance. Plaintiff also testified further about his Complaint. On both Section III and a type written page regarding administrative remedies, Plaintiff indicated that Menard had a grievance procedure but that he did not file a grievance (Doc. 1 at pp. 8-9). Instead, Plaintiff indicated in his Complaint that he followed procedures for institutions without grievance procedures by informing the gallery officer and lieutenant about his injuries and having them call the health care unit for treatment (*Id.* at p. 9). Plaintiff also admitted that he did not attach any requests for administrative remedies and under Section III Part H where he was asked to attach requests, he wrote "N/A" for "not applicable" (*Id.* at pp. 9-10).

### C. Exhibits and Other Filings

At the hearing Defendant offered Defendant's Exhibit #1, an affidavit from Menard grievance officer Lori Oakley. The affidavit indicated that she had searched Menard's database for grievance filed by Plaintiff from 12/1/2010 until the present and was unable to locate any grievance. Plaintiff objected to the introduction of the exhibit as he had not had a chance prior to the hearing to review the document and because he had requested a similar search from Defendant of the grievance records and a response had never been provided. The Court took the objection under advisement.

Subsequent to the *Pavey* hearing, Plaintiff also filed a Motion to Enter New Evidence (Doc. 32). In that motion, Plaintiff indicated that he had located a grievance he filed on September 20, 2011, regarding his dental treatment, and attached the grievance and response to his motion. Although the grievance does not relate to the issues before the Court in this case, Plaintiff offered the grievance as further evidence that Defendant's affidavit from Lori Oakley should not be accepted as Plaintiff did file grievances in 2011, while Oakley's exhibit indicated that no grievances had been filed. A review of Plaintiff's offered exhibit shows that he did file a grievance on September 20, 2011 regarding his dental care and that his grievance was responded to by Janette Kinkade, Nursing Supervisor on October 4, 2011. The exhibit does indicate that the Oakley affidavit is incorrect as Plaintiff did file a grievance between 12/1/2010 and the present. Because Plaintiff would be prejudiced by the late disclosure of the Oakley affidavit, and because the affidavit appears to be incorrect, Plaintiff's objection to the admittance of that affidavit is sustained. Thus, the undersigned will not accept Defendant's Exhibit #1 in its consideration of Defendant's motion, but will accept Plaintiff's offered exhibits of his grievance submitted on September 20, 2011. Accordingly, Plaintiff's motion to enter new evidence (Doc. 32) is **GRANTED**.

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted.*" *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey***, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Monson was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800 et seq.** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent

personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Here, the undersigned **FINDS** that Plaintiff has failed to exhaust his administrative remedies. While Plaintiff testified that he did file a grievance after August 2011 regarding his delay in treatment for his spider bite, the undersigned does not find Plaintiff's testimony to be credible. In fact, his testimony is refuted by his own Complaint. Plaintiff's Complaint indicates on numerous occasions that he did not exhaust his administrative remedies. He indicates under Section III that Menard Correctional Center has a grievance procedure but that he did not file a complaint under the grievance process. When asked to describe the steps he took as part of the grievance process and the results of those actions, he marked "N/A" for "not applicable", further indicating that he had not filed a grievance. When asked to explain why he did not file a grievance, he offered a detailed explanation for why he could not file a grievance because of a spider bite that was life threatening. He even went on to state that he tried to follow a procedure for prison's without grievance procedures, claiming that he spoke with several guards and officers on numerous occasions to obtain treatment for his spider bite from the medical staff (Doc. 1 at pp. 9 & 10). Given the specificity in his Complaint, and the fact that he reiterated in several locations in his Complaint that he did not file a grievance, the undersigned finds his testimony now that he did file a grievance, albeit in August 2011, inconsistent and not

credible.

The undersigned also finds Plaintiff's testimony not credible due to his failure to address the full scope of his medical claims. Plaintiff testified that he filed a grievance sometime after August 2011 regarding two issues with his medical treatment for his spider bite. He first complained of the delay in treatment for his spider bite, and also complained about the medical staff's failure to provide Plaintiff with outside care from a specialist. Plaintiff claimed that he waited to file this grievance regarding his delay in treatment until after his medical care was completed and once he saw that his medical care was improper. However, his Complaint does not discuss the treatment he received from the medical staff and does not include any claims for Nwaobasi's deliberate indifference in treatment. The undersigned finds this to be further proof that Plaintiff did not file the grievance he alleges he filed as there are no allegations regarding his treatment, which he claims was deliberately indifferent. Thus, the undersigned credits the statements in his Complaint over his testimony and finds that he did not file a grievance on his delay in treatment.

While Plaintiff argues that his notations in the Complaint indicated that while Menard currently has a grievance process at the time of the filing of his Complaint they did not at the time of his incident, he has offered no evidence to support this notion. His Complaint, though detailed on the grievance and administrative remedies process, does not note this distinction, nor has Plaintiff offered any other evidence to support his claim. Instead, Plaintiff offers a grievance that he submitted in September 20, 2011 that was responded to by a Nursing Supervisor. This grievance shows that there was, in fact, a working grievance process at Menard at the time of Plaintiff's complaints. It is also evidence that Plaintiff knew how the grievance system at Menard worked and utilized it on other occasions, just not for his delay in treatment claim against Dr. Nwaobasi.

Plaintiff also makes much of the fact that he believes the grievance process would not

offer him an adequate remedy as he was suing for a delay in treatment which happened in December 2010. Plaintiff argued that there is no administrative remedy for a delay in treatment, when Plaintiff eventually did get treatment. However, the Seventh Circuit has repeatedly rejected that position, finding that there is no "futility exception" to the PLRA. *See Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (Plaintiff's position that no administrative remedies were available because he only sought monetary damages which would not be awarded through the grievance process was rejected because "§1997e(a) does not require the prison to use the prisoner's *preferred* remedy."));** *Massey v. Wheeler*, **221 F.3d 1030, 1034 (7th Cir. 2000);** *Thornton v. Snyder*, **428 F.3d 690, 694 (7th Cir. 2005) ("Even when the prisoner seeks relief not available in grievance proceedings…, exhaustion is a prerequisite to suit." (citations omitted)).**

### IV.   Conclusions

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies, **GRANT** summary judgment in favor of Defendant Nwaobasi, and **DISMISS** Plaintiff's deliberate indifference claim against Defendant Nwaobasi **without prejudice**.

Should the Court adopt this Report and Recommendation, the only claims that will remain are the deliberate indifferent claims against unknown defendants.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir.**

Case 3:12-cv-01262-MJR-SCW   Document 33   Filed 04/23/13   Page 12 of 12   Page ID #177

2004).    Accordingly, Objections to this Report and Recommendation must be filed on or before **May 10, 2013**.

    **IT IS SO ORDERED**.
    DATED: April 23, 2013.

                                          */s/ Stephen C. Williams*
                                          STEPHEN C. WILLIAMS
                                          United States Magistrate Judge

Page 12 of   12